ALYCE I. HODGSON, Plaintiff and Respondent, *v.* JOSEPH
W. HODGSON, Defendant and Appellant.

No. 11907.
Decided March 1, 1971.
482 P.2d 140.

Berger, Anderson & Sinclair, Arnold A. Berger argued, Billings, for defendant and appellant.

Hibbs, Sweeney & Colberg, Maurice R. Colberg, Jr., argued, Billings, for plaintiff and respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal by the defendant from a judgment entered upon findings of fact and conclusions of law in a divorce action. The findings of fact and conclusions of law which are contested concern the division of property between the litigants. The award of divorce to the plaintiff is not contested.

Plaintiff in her amended complaint alleged that certain property, both real and personal, was in joint tenancy and certain property was in their individual names. She asked the court to settle and adjust such property rights between the parties as appeared in their best interests, and if necessary to partition such real and personal property or order the sale thereof and divide the proceeds. The trial court in lieu of alimony adjusted the property rights between the parties and partitioned the jointly held property by divesting the defendant of his right in the family home and an apartment house; and divesting each party of his or her right in certain specific personal property held jointly.

The parties were married approximately 23 years; at the time of the marriage the wife was twenty and the husband twenty-one. Defendant, Mr. Hodgson, graduated from Montana State College with a degree in business administration in 1948. His work experience consisted of—two years at Bank of America as a teller, two years with Safeco Insurance Company, and two years with International Harvester, all in San Francisco. In 1953 he moved to Billings and worked four years with Standard Oil of New Jersey. He then worked seven years for Humble Oil terminating his employment there in June 1964. After leaving Humble in 1964 he worked with Wally Mading and Miracle Realty as a real estate salesman

for one and one half years, although he earned no sales commissions. He then went into a construction business for approximately one year. From February 1967 to May 1969 he was with Giseburt-Hodgson Insurance Agency. From June 1969 until the present time, he has been employed by K-Decorators of Billings.

From 1948 until 1964 his monthly earnings increased from $250 with Bank of America to $640 with Humble. After leaving Humble in 1964 until his present job he did not earn from his employment more than $2,000 per year.

Plaintiff, Mrs. Hodgson, attended college two years. Her work experience consisted of—one and one half years as a secretary while Mr. Hodgson was completing his college education and as a secretary or bookkeeper at various times during their marriage. She has recently been employed by Giseburt-Hodgson Insurance Agency. After the birth of her first child, until recent years, Mrs. Hodgson did not work outside of the home but confined her work to making a home for her family of four children.

When Mr. Hodgson's job with Humble was terminated in 1964, stock which was part of inherited assets, hereinafter discussed, was sold to pay bills and living expenses. At the time of the hearing, December 29, 1969, there was approximately $2,000 in family bills remaining unpaid which had been incurred prior to the entry of the divorce decree on October 31, 1969.

In 1961 Mrs. Hodgson inherited assets worth $68,643.67. In 1964 and 1965 Mr. Hodgson inherited assets worth $47,334.92. Therefore, Mrs. Hodgson contributed by way of inheritance assets $21,308.75 more than Mr. Hodgson. $5,626.33 of Mrs. Hodgson's inheritance can be directly traced to the down payment and supplemental payments on the family home in 1961. $25,031.92 of Mrs. Hodgson's inheritance can be traced directly to the down payment on the apartment house in 1962. The remainder of both inheritances was used for investments and

to pay family bills during the marriage, except for what has been left. The evidence shows that in 1964 when Mr. Hodgson received his inheritance, he promptly lost his job at Humble. From then until June 1969, his present job, he did not have a substantial or steady job to contribute to the support of the family. The inheritances of both parties were depleted to support the family.

Ownership of properties at the time of trial was as follows: Each party had a one half interest in jointly owned (1) family home equity $12,717.23, (2) apartment house equity $60,423.78, and (3) other assets $7,745. The total equity in jointly owned assets was $80,886.01. Each party's one half interest in the jointly owned assets would be valued at $40,443. In addition, each party had assets in their separate names. Mr. Hodgson's assets were valued at $25,873.70 and Mrs. Hodgson's at $1,572.

Mrs. Hodgson's estimated monthly expenses were $675. Her earnings for June through December 1969, including salary and commissions, were approximately $250 per month. The court's previous order gave her $260 per month as child support.

At the time of the hearing Mr. Hodgson's monthly income was $667 which after taxes and union deductions was $535.24. In addition he received $8 per day subsistence when out of town, which during the seven months prior to the hearing averaged 16 to 17 days per month. He had, therefore, received an additional $132 per month in the form of subsistence. His evidence was that he spent $4.30 per day more than he received in subsistence while out of town. That evidence would indicate that after paying child support he was $312.92 in the red each month. It is interesting to note that even taking out the child support payment, he made approximately $53 less a month than he spent and thus could not even support himself on his pay, according to his evidence.

Three issues are presented for review:

1. Whether the district court has the power in a divorce action to settle and adjust the property rights of the parties by partitioning jointly held property?

2. Whether the partition of jointly held property was properly raised by the pleadings of the case?

3. Whether the district court abused its discretion in settling and adjusting the property rights as it did?

The law is well settled in this state that a district court has the power to grant a divorce and at the same time divide the parties' rights in property accumulated by their joint efforts. Tolson v. Tolson, 145 Mont. 87, 92, 399 P.2d 754; Bloom v. Bloom, 150 Mont. 511, 437 P.2d 1.

This Court said in *Tolson*:

"By this Rule [Rule 18(a), M.R.Civ.P.] the claims for divorce and property division could be joined."

Defendant concedes that Rule 18(a), M.R.Civ.P., is the law in Montana, but he urges that the pleadings in the case were not sufficient to permit the district court to partition the jointly held property.

Plaintiff in her amended complaint alleged that certain property, including real and personal property, had been earned through the joint efforts of the parties. She then prayed:

"That the Court settle and adjust the property rights of the plaintiff and defendant, and if necessary partitioning the real and personal properties of plaintiff and defendant and ordering that the same be sold and the proceeds divided pursuant to the order of the Court and if necessary appointing such referees or receivers as may be necessary to carry out the Court's orders."

The above prayer for relief was copied by the plaintiff in her amended complaint from the defendant's counterclaim to the original complaint. Now, on appeal, defendant is asserting that the pleading is insufficient.

Defendant's argument is that "no place in the pleadings is it either alleged, nor were facts proven which would justify the Court in ordering a transfer of title to real property from the defendant to plaintiff." Defendant alleges that sections 93-6301 through 93-6360, R.C.M.1947, govern the partition of real property and that the pleadings and proven facts do not justify the partition of "real or personal property other than in accordance with the stated titles  *  *  *."

We find no merit in this contention. The purpose of pleading under the new rules is to put the court and the parties on notice of the claim being made. It is obvious that the defendant had proper notice. The case was argued and briefed by both sides on the question of who was entitled to what. Defendant's Exceptions and Motion to Amend Conclusions of Law did not refer to any error in the pleadings, but rather to the way the property was divided. Therefore the defendant should not now complain that the pleadings were improper. The relief given in a case such as this is an equitable division of the litigants' property, and there is no particular pleading which is necessary to raise the question. As long as the pleading is "*  *  * simple, concise, and direct. No technical forms of pleading or motions are required." Rule 8(e), M.R. Civ.P. Such was the case here.

The last specification of error is that the district court abused its discretion in settling and adjusting property rights as it did. Defendant claims that the properties of the parties should have been split equally between them or at least in proportion to the percentage of the parties' inheritances, 59% to Mrs. and 41% to Mr. The district court decreed Mrs. Hodgson 71% and Mr. Hodgson 29%. We cannot say that the district court abused its discretion in making its determination.

In adjusting and settling the property and alimony matters, the district court was faced with a dilemma. If the titles to the properties were left alone, Mr. Hodgson would have assets

valued at $24,301.70 more than Mrs. Hodgson, although his inherited assets that went into the marriage were $21,308.75 less than those of Mrs. Hodgson. This result was obviously inequitable. A monthly alimony award in any amount would have been of no use to plaintiff since it would apparently have been impossible for defendant to pay.

Defendant's evidence indicated expenditures in excess of $300 per month more than his earnings. There was no way for him to pay any more money out of his earnings. Also, it could not be presumed that he would continue working. The record shows that he has held many jobs and has been unemployed for periods of time. It also shows that he was substantially unemployed, at least so far as making any monetary contribution in the form of earnings, from the time he lost his job with Humble in 1964 until June 1969, a period of almost 5 years. As a practical matter, Mrs. Hodgson will only receive what was awarded to her out of Mr. Hodgson's assets.

When Mr. Hodgson is working, his earing capacity is substantially greater than that of Mrs. Hodgson. He is a college graduate. The parties had been married for 23 years. Taking all of these circumstances into account the district court found that an equitable solution was to give Mrs. Hodgson Mr. Hodgson's equities in the apartment house and family home. His interest in these assets was worth approximately $35,000. The court could accomplish this result in several possible ways. One was by a decree that the title to the apartment house and family home be completely divested from Mr. Hodgson and total interest owned by Mrs. Hodgson.

Plaintiff suggests the $35,000 as fair and equitable in the light of the record. However, plaintiff also suggests that the minimum of such an award should have been at least $33,459.60. This is computed by adding the value of the additional assets contributed to the marriage by Mrs. Hodgson ($21,308.75) to one-half of the value of the property left standing in Mr. Hodgson's name in excess of that in her name (½ of $24,301.70=

$12,150.85). This tends to equalize what each party will receive from the assets created by the investment of their inheritances and their joint efforts during marriage. It also credits Mrs. Hodgson with the additional amount of her inheritance contributed to the marriage and used to create the assets left at the time of the hearing.

We cannot say as a matter of law that the district court abused its discretion.

The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, DALY and HASWELL, concur.